ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Direct Steel, LLC | ) | ASBCA No. 63837 |
| | ) | |
| Under Contract No. W9126G-21-C-0003 | ) | |

APPEARANCES FOR THE APPELLANT:    Mr. Matthew D. Nagel
       Vice President

                                               Kendall Woods, Esq.
                                               Mark Noth, Esq.
                                                 Laurie & Brennan, LLP
                                                 Chicago, IL

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
       Engineer Chief Trial Attorney
     R. Stephen Cheak, Esq.
       Trial Attorney
       U.S. Army Engineer District, Fort Worth

<u>OPINION BY ADMINISTRATIVE JUDGE MCLISH ON THE GOVERNMENT'S
MOTION FOR JUDGMENT ON THE PLEADINGS</u>

       This appeal involves a contract between Direct Steel LLC (Direct Steel) and the Army Corps of Engineers (Corps) for construction work at Fort Hood (now Fort Cavazos), Texas. The contract required Direct Steel to connect the project's infrastructure to the utilities at the site. It also specifically required Direct Steel to engage the utility provider, Dominion Privatization Texas, LLC (Dominion), to perform that work. Direct Steel seeks an equitable adjustment to the contract price to account for a substantial increase in Dominion's pricing it learned of only after contract award. The Corps denies that Direct Steel is entitled to an equitable adjustment.

       The government filed a motion for judgment on the pleadings seeking dismissal of the complaint on the grounds that Direct Steel has failed to allege facts sufficient to state a claim upon which relief can be granted. Direct Steel filed an opposition to the motion. The government did not file a reply.

       We deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

Direct Steel has alleged the following in the complaint.

1.    On August 20, 2019, the Corps issued Solicitation No. W9126G19B0029, requesting bids for the construction of a project located at Fort Hood and known as the Supply Support Activity (SSA) Warehouse project (the Project) (Compl. ¶ 4).

2.    On September 19, 2019, Direct Steel submitted the lowest responsive and responsible bid for the Project (*id.* ¶ 5).

3.    On or around December 10, 2020, the Corps issued the award and entered into a contract with Direct Steel for the Project (Contract) (*id.* ¶ 7).

4.    Certain utilities at Fort Cavazos (formerly Fort Hood) are privately owned and operated.  Dominion Privatization Texas, LLC ("Dominion"), owns, operates, and maintains the natural gas, electrical, and site lighting utilities at Fort Cavazos.  (*Id.* ¶ 10)

5.    The Contract scope included the utility connection work necessary to link the Project's utility infrastructure to Dominion's utilities, as shown on the Contract drawings and specifications (*id.* ¶ 12).

6.    Direct Steel was required to engage Dominion for the performance of the work (*id.* ¶ 13).

7.    The solicitation instructed bidders to solicit cost proposals from Dominion and identify the costs on a separate Contract Line Item Number ("CLIN"), CLIN 006, in the bid form (*id.* ¶ 15).

8.    Direct Steel engaged Dominion during the bid phase and obtained price proposals for the work required to connect the Project's infrastructure to Dominion's natural gas and electrical utility infrastructure.  Dominion provided a price proposal, dated September 12, 2019, for the natural gas tie-in in the amount of $23,803.43, and a price proposal for the electrical utility infrastructure work, dated September 13, 2019, in the amount of $279,630.23.  (*Id.* ¶ 16)

9.    In accordance with the solicitation, Direct Steel relied on Dominion's proposals when it submitted its bid, which stated the amount of $341,475 on CLIN 006 for all of Dominion's work required by the Contract.  The amount represented the subtotal of Dominion's proposals plus proper markup.  (*Id.* ¶ 17)

10.   Prior to contract award, the Corps twice asked Direct Steel to extend its bid beyond the 120-day bid acceptance period specified in the solicitation.  Direct Steel ultimately agreed to hold its bid through December 2020.  (*Id.* ¶ 6)

11.   Each time the Corps asked Direct Steel to extend its bid, Direct Steel contacted its subcontractors and suppliers, including Dominion, to confirm if they could also extend their bids as requested by the Corps.  Despite Direct Steel's diligent efforts to contact Dominion, Dominion never responded to Direct Steel.  (*Id.* ¶¶ 18-19)

12.   Dominion did not revise its price proposal before the Corps awarded the Contract to Direct Steel.  Thus, when the Corps awarded the Contract to Direct Steel on December 10, 2020 the Contract price was based on the proposal pricing Direct Steel received from Dominion in September 2019.  (*Id.* ¶¶ 19-20)

13.   After the parties entered into the Contract, Direct Steel learned of a significant, unanticipated increase in Dominion's proposal pricing.  When Direct Steel met with the Corps for the initial preconstruction conference on March 2, 2021:  (a) the Corps informed Direct Steel that Dominion had recently "completed their design" for the utility connection work; (b) the Corps represented that Dominion had committed to providing its cost estimate, which it had already provided to the Corps, to Direct Steel; and (c) the Corps' administrative contracting officer acknowledged that the circumstances required an equitable adjustment to account for Direct Steel's increased costs to accomplish the Dominion work.  (*Id.* ¶ 21)

14.   On or around March 2, 2021, Direct Steel received Dominion's proposals for the natural gas and the electrical utility infrastructure work.  While Dominion's price for the natural gas work did not change, its price for the electrical utility infrastructure work increased substantially, from $279,630.23 to $440,464.91.  (*Id.* ¶ 22)

15.   As required by the Contract and as instructed by the Corps during the preconstruction conference, on March 10, 2021, Direct Steel executed the utility connection charge agreement with Dominion ("CCA") based on Dominion's revised pricing, which Dominion Steel countersigned on March 24, 2021 (*id.* ¶ 24).

16.   Direct Steel:  (a) could not have reasonably foreseen the Dominion cost increase when it submitted its bid for the Project and when it agreed to extend its bid at the request of the Corps; (b) had no control over the cost increase; and (c) had no means of mitigating the cost increase, as Dominion owns, operates, and maintains its utilities and is the sole-source provider of the work (*id.* ¶ 37).

17.   Before the Corps awarded the Contract to Direct Steel, the Corps knew or reasonably should have known that Dominion had been unresponsive to Direct Steel's solicitations, as the Corps had encountered similar difficulties with Dominion on other

3

construction projects at Fort Hood and/or as the Corps had notice as to the status of Dominion's design work (*id.* ¶ 47).

18. Direct Steel submitted a request for equitable adjustment to the Contracting Officer, which it later converted into a certified claim, requesting $181,399.34 (*id.* ¶¶ 27, 29).

19. The Contracting Officer did not issue a final decision within 60 days of the claim (*id.* ¶ 31), and this appeal followed.

<u>DECISION</u>

I. <u>Standard of Review</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The Board has considered Rule 12(c) motions even though [its] Rules do not specifically provide for such a motion." *Honeywell Int'l, Inc.*, ASBCA No. 63286, 23-1 BCA ¶ 38,370 at 186,359.

A "court should only grant a defendant's motion for judgment on the pleadings if the defendant is clearly entitled to judgment on the basis of the facts as the plaintiff has presented them." *Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1364 (Fed. Cir. 2020) (quoting *Owen v. United States*, 851 F.2d 1404, 1407 (Fed. Cir. 1988)). We apply the same standard to a motion for judgment on the pleadings that we apply to a motion to dismiss for failure to state a claim. *See Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009); *Supreme Foodservice GMBH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,426 at 177,581. Dismissal for failure to state a claim is appropriate only where the non-conclusory facts asserted by the claimant do not plausibly suggest a showing of entitlement to a legal remedy. *Cary*, 552 F.3d at 1376; *Kandahar Mahali Transit & Forwarding Ltd.*, ASBCA No. 62319, 20-1 BCA ¶ 37,635 at 182,725. The alleged facts "must be enough to raise a right to relief above the speculative level." *Cary*, 552 F.3d at 1376 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). We decide "only whether the claimant is entitled to offer evidence in support of its claims, not whether the claimant will ultimately prevail." *Parsons Gov't Servs., Inc.*, ASBCA No. 60663, 17-1 BCA ¶ 36,743 at 179,101 (quoting *Matcon Diamond, Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,407).*

---

* To the extent the parties rely on materials outside the pleadings, we disregard them for purposes of this motion rather than convert the motion to one for summary judgment, which would be premature because discovery is ongoing and

4

II.  Appellant has Adequately Pleaded a Claim Under at Least one Legal Theory

Direct Steel's complaint asserts three theories of recovery, all essentially based upon the same operative facts outlined above:  constructive change, superior knowledge and breach of the implied duty of good faith and fair dealing.  The government argues that, as to each of these theories, Direct Steel has failed to plead facts sufficient to meet the necessary elements and therefore failed to state a claim for relief.  We hold that Direct Steel has adequately pleaded a claim under its superior knowledge theory and therefore the government is not entitled to judgment on the pleadings.  We defer ruling on the government's arguments for judgment on the other two theories, because dismissal of either of those theories based on the same facts does not appear likely to affect the scope of discovery.  *See* Board Rule 7(a).

In order to prevail on a claim of superior knowledge, the contractor must demonstrate that:

> (1)  a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

*Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012) (quoting *Hercules, Inc. v. United States*, 24 F.3d 188, 196 (Fed. Cir. 1994)).

Direct Steel's factual allegations, when considered in the light most favorable to it, can be read to suggest the presence of each of these elements.  The complaint clearly alleges the first and fourth elements:  Direct Steel did not know at the time of bid that Dominion would raise its pricing and the government did not reveal that information in time for Direct Steel to account for it in its proposal (compl. ¶¶ 17-21).

Drawing all reasonable inferences in Direct Steel's favor, the allegations also support the third and fourth elements.  The alleged facts, if proved, indicate that the government was in regular communication with Dominion about the project, was aware that Dominion was uncommunicative with the government's contractors who were charged with working with it on utility work, and knew that Dominion was changing its design for the utility work at issue.  A plausible inference from these

---

appellant is entitled to a reasonable opportunity to present all material that is pertinent to the motion.  *See* Fed. R. Civ. P. 12(d).

5

allegations is that the government knew that Dominion was going to raise its price, knew that Direct Steel did not know this and was unable to obtain this information from Dominion, and that Direct Steel was effectively misled into relying on Dominion's original price. Further, the allegation that the Corps' administrative contracting officer acknowledged at the pre-construction conference that Direct Steel was entitled to an equitable adjustment supports an inference that he recognized that the circumstances were such that it would be unfair to require Direct Steel to absorb Dominion's cost increase.

While Direct Steel makes no specific factual allegation to support its conclusory allegation that "before the Corps awarded the Contract to Direct Steel, the Corps knew or reasonably should have known that Dominion's price had increased," (compl. ¶ 48), its specific factual allegations are sufficient to make that conclusion plausible. The same is true of the allegations that the Corps was aware or should have been aware that Direct Steel did not know of the price increase and had no reason to obtain that information beyond the steps it had taken to verify Dominion's price (*id.* ¶ 49).

Accordingly, the complaint's factual allegations are enough to state a claim for relief on its superior knowledge claim and survive the government's motion for judgment on the pleadings.

<u>CONCLUSION</u>

The government's motion for judgment on the pleadings is denied with respect to superior knowledge. The Board defers ruling on appellant's other legal theories.

Dated: March 10, 2025

THOMAS P. MCLISH
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

6

I concur                                                    I concur

_____                    _____
OWEN C. WILSON                                  MICHAEL N. O'CONNELL
Administrative Judge                               Administrative Judge
Acting Chairman                                     Vice Chairman
Armed Services Board                             Armed Services Board
of Contract Appeals                                 of Contract Appeals


         I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 63837, Appeal of Direct
Steel, LLC, rendered in conformance with the Board's Charter.

         Dated:  March 10, 2025

                                                        _____
                                                        PAULLA K. GATES-LEWIS
                                                        Recorder, Armed Services
                                                        Board of Contract Appeals